**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Southwest Fair Housing Council, an Arizona non-profit corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>WG Campana del Rio SH LLC,<br><br>　　　　　　　　　　　　Defendant. | Case No.  4:19-cv-00179-TUC-RM<br><br>**JOINT PROPOSED FINAL PRETRIAL ORDER** |

　　　The following is the Joint Proposed Final Pretrial Order to be considered at the Final Pretrial Conference.

**A.　　TRIAL COUNSEL FOR THE PARTIES**

**Plaintiff:**
Eric Baum (Admitted Pro Hac Vice)
Andrew Rozynski (Admitted Pro Hac Vice)
Reyna Lubin (Admitted Pro Hac Vice)
**EISENBERG & BAUM, LLP**
24 Union Square East
Penthouse
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 917-591-2875
E-mail: ebaum@EandBLaw.com
　　　　arozynski@EandBLaw.com
　　　　rlubin@EandBLaw.com

William A. Richards #013381
Shayna G. Stuart #034819
**Richards & Moskowitz plc**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone No. 602-595-7800
Facsimile No. 602-812-7995
E-mail: BRichards@rmazlaw.com
         SStuart@rmazlaw.com
*Attorneys for Plaintiff*

**Defendant:**
R. Shawn Oller
Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ  85016
soller@littler.com
pprynkiewicz@littler.com
*Attorneys for Defendant*

**B.**     **STATEMENT OF JURISDICTION**

This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1343 for Plaintiff's claims arising under federal law and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state law. No jurisdiction issues exist.

**C.**     **STIPULATIONS AND UNCONTESTED FACTS AND LAW**

    **1.**     **The following material facts are admitted by the parties and require no proof:**

    A. Plaintiff, The Southwest Fair Housing Council ("SWFH"), is a non-profit organization based in Tucson, Arizona that investigates illegal housing discrimination in Arizona.

    B. As a part of an investigation, Plaintiff employs testers to engage in communications with housing facilities through e-mail, phone, and/or in-person visits.

    C. Plaintiff employed testers to investigate WG Campana del Rio SH, LLC ("Campana del Rio").

    D. Plaintiff instructed those testers to pose as relatives of deaf individuals to investigate

if Defendant would provide auxiliary aids and/or American Sign Language ("ASL") interpreters for important communications.

E. Defendant Campana del Rio is an assisted living center located in Tucson, Arizona that provides certain care and services to senior citizens.

F. Defendant Campana de Rio is authorized to provide 84 residents with personal care services, and up to 16 residents with directed care services.

G. Residents receiving personal care services may receive assistance with bathing or getting dressed, and may receive escorts to and from meals or events.

H. Residents receiving directed care services may receive memory care services, which include living in a secure environment, heightened monitoring, assistance with bathing and grooming, and supervision while taking medication.

I. On June 22, 2016, Plaintiff's tester Nermana Pehlic, formerly known as Nermana Hasancevic, visited Defendant's assisted living facility on behalf of her deaf grandmother, who was a fictional character created for testing purposes.

J. On June 22, 2016, Ms. Hasancevic met with Defendant's Community Sales Director, Clause Ommegard.

K. The entire conversation between Ms. Hasancevic and Mr. Ommegard was recorded.

L. On December 21, 2016, Plaintiff's tester Maggie Johnson emailed Defendant's employee, Hope Guevara, who responded to Ms. Johnson by email.

M. On January 7, 2017, Defendant's employee, Ms. Guevara, sent Plaintiff's testers Ms. Hasancevic and Ms. Johnson a second email message.

**2.    The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:**

　　A.    Plaintiff trained its testers.

　　B.    Plaintiff paid its testers for conducting the tests.

　　C.    Plaintiff's calculation of damages for the diversion of resources related to Defendant amounts to $3,428.00.

　　D.    Plaintiff's calculation of damages for the frustration of mission related to

3

Defendant amounts to $520,000.

      3.      **The following issues of law are uncontested and stipulated to by the parties:**

          a.  Not Applicable.

**D.    CONTESTED ISSUES OF FACT AND LAW**

      1.      **The following are the material issues of fact to be tried and decided:**

    **A. Whether Defendant's employees refused to provide interpreters to Plaintiff's testers' deaf relative?**

        i.      **Plaintiff's position.**

Defendant unequivocally denied Plaintiff's testers' request for interpreters on June 22, 2016, December 21, 2016 and January 7, 2017. Additionally, Defendant's employees told Plaintiff's testers that their deaf relatives could provide and fund their own interpreter services.

        ii.      **Defendant's position.**

Defendant did not refuse to provide an ASL interpreter to the testers' fictional grandmother. In response to Defendant's suggestion that deaf residents communicated effectively with staff through note writing, Plaintiff never sought to explain why such a method would be effective in this particular case and never indicated that an interpreter was necessary to ensure effective communication with the testers' fictional grandmother.

    **B. Whether Plaintiff's requests for an interpreter was a reasonable accommodation?**

        i.      **Plaintiff's position.**

Plaintiff states that a sign language interpreter is a reasonable accommodation for vital communications regarding medical-related conversations and conversations regarding an elderly deaf person's admission into Defendant's facility. Written materials are not sufficient to permit effective communication when complex information is exchanged; instead a qualified interpreter is necessary. *Duffy v. Riveland*, 98 F.3d 447, 456 (9th Cir. 1996) (quoting 28 C.F.R. Part 35, App. A).

        ii.      **Defendant's position.**

Plaintiff cannot establish the need for an interpreter to ensure effective communication

in this case. Defendant clearly indicated its willingness to work with the testers and the fictional grandmother to ensure effective communication and full access to its services.

### C. Whether an ASL interpreter was necessary to provide the testers' deaf relative with a full and equal opportunity to enjoy Defendant's services or to ensure effective communication?

**i.    Plaintiff's position.**

ASL interpreters were necessary for the testers' relative to receive a full and equal opportunity to enjoy Defendant's services and/or to ensure effective communication. Due to physical, environmental, and pedagogical factors, the average reading level of a deaf individual is at a third or fourth grade reading level. This is because English is generally a second language (after ASL) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life and well past the critical developmental period of language acquisition. Accordingly, many deaf individuals rely on ASL to communicate and ensure effective communication, especially in conversations involving complexity. Without assessing the deaf resident's ability to read, write, and communicate in English, Defendant denied testers' request for an interpreter and only offered the deaf relative a note writing option, which employs an entirely different language than the requested communication.

**ii.    Defendant's position.**

Plaintiff cannot show that an ASL interpreter was necessary for the testers' fictional grandmother to receive a full and equal opportunity to enjoy Defendant's services and/or to ensure effective communication. Defendant repeatedly offered written notes as an auxiliary aide or service to provide for effective communication with the testers' fictional grandmother and Plaintiff cannot offer any evidence to show that this offer would not have provided for effective communication with the testers' grandmother or allowed her to fully and equally enjoy Defendant's services under any particular circumstances

**2.    The following are the issues of law to be determined:**

**A.    Whether Defendant violated the ADA, FHA, and AzFHA by failing to offer a reasonable accommodation that would allow the testers' deaf relative a full and equal opportunity to enjoy Defendant's services?**

         **i.    Plaintiff's position:**

Defendant violated the ADA, FHA, and AzFHA. Plaintiff's testers requested Defendant to provide an interpreter for their deaf relatives during vital communications such as medical-related conversations and conversations regarding the relative's admission into Defendant's facility. Plaintiff contends that Defendant offered only one accommodation, a note writing option, without consulting with the deaf individual and without asking further questions of the testers to attempt to ascertain the extent of the deaf individual's communication needs.

***Written Materials***. The complexity of the above-mentioned discussions warranted an ASL interpreter. 28 C.F.R. § Pt. 36, App. C, at 33, ¶ 8 (2011). Indeed, written materials are not sufficient to permit effective communication when complex information is exchanged. *See Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 837 n.8 (11th Cir. 2017) (the exchange of written notes is not appropriate when the matter involves complexity, such as communications of medical history or instructions for care at home or elsewhere). Without assessing the deaf resident's ability to read, write, and communicate in English, Defendant only offered the testers' deaf relative a note writing option, which employs an entirely different language than the requested communication. "To deny a deaf person an ASL interpreter, when ASL is their primary language, is akin to denying a Spanish interpreter to a person who speaks Spanish as their primary language." *Updike v. Multnomah Cty.*, 870 F.3d 939, 958 (9th Cir. 2017).

***Funding Own Accommodations.*** Defendant required the testers' deaf relatives to provide and fund their own ASL interpreters in violation of the law. *See Tauscher v. Phoenix Board of Realtors, Inc.*, 931 F.3d 959 (9th Cir. 2019) (determining that a public accommodation may not require disabled individuals to provide their own interpreter); *United States v. California Mobile Home Park Mgmt Co.*, 107 F.3d 1374, 1460 (9th Cir. 1997) ("the FHA clearly establishes that Congress anticipated that landlords would have to shoulder certain costs involved, so long as they are not unduly burdensome.").

***Failure to Engage in Interactive Process.*** Under the FHA and the AzFHA, Defendant was required to engage in an interactive process to assess the prospective deaf resident's communication needs. *Montano v. Bonnie Brae Convalescent Hosp., Inc.,* 79 F. Supp. 3d 1120, 1127 (C.D. Cal. 2015) (determining that the defendant nursing home was required to engage with plaintiff to discuss and explore plaintiff's requested accommodations); *see also Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996). Over the course of 6 months, Defendant's staff failed to express a need or desire to assess the deaf relative's communication ability.

***Money damages.*** If the jury finds that Defendant's actions were discriminatory, Plaintiff would be entitled to actual and punitive damages under the FHA and AzFHA. *See* 42 U.S.C. § 3613(c); Ariz. Rev. Stat. § 41-1491. Additionally, Plaintiff would be entitled to nominal damages under Spending Clause legislation. *Uzuegbunam v. Preczewski*, No. 19-968, 592 U.S. ___, 2021 U.S. LEXIS 1372 (March 8, 2021).

### ii. Defendant's position.

Defendant offered a reasonable accommodation that, as far as it understood based on the vague and general information that the testers provided, would have allowed the testers' fictional grandmother to fully and equally enjoy its services.

### B. Whether Defendant suffered an undue burden or fundamental alteration relieving Defendant of its obligation to provide interpreters under the ADA, FHA, and AzFHA?

### i. Plaintiff's position.

Under all discrimination statutes, Defendant was required to furnish appropriate auxiliary aids to afford deaf individuals the same equal enjoyment and access to Defendant's services as hearing individuals unless the entity can demonstrate an undue burden. 42 U.S.C.S. § 12182(a); *see also Zatopa v. Lowe*, No. C 02-02543 WHA, 2002 U.S. Dist. LEXIS 29104, at *21-22 (N.D. Cal. Aug. 7, 2002) (applying ADA and RA case law to FHA claim for reasonable accommodation). An "undue burden" is defined as "significant difficulty expense." 28 C.F.R.

§ 36.104. Evidence shows that Defendant was financially capable of providing interpreters; however, Defendant refused to do so. Accordingly, Defendant violated all discrimination statutes.

### ii. Defendant's position.

Plaintiff provided insufficient information to allow Defendant to determine whether it would suffer an undue burden by providing an ASL interpreter to the testers' fictional grandmother.

### E. LISTS OF WITNESSES

#### 1. Plaintiff's Witnesses:

##### A. Jay Young

John ("Jay") Young is the Executive Director of SWFH, the organization responsible for the testing conducted at Defendant's facility. Mr. Young will testify to the testing conducted and Defendant's facility, the expense of the investigation, the frustration of SWFH's organizational mission, and the diversion of SWHC resources to combat the particular housing discrimination in question.

##### B. Erika Hardwick

Erika Hardwick is Plaintiff's employee responsible for creating and analyzing Plaintiff's testing. Ms. Hardwick will testify to the testing conducted and Defendant's facility, the expense of the investigation, the frustration of SWFH's organizational mission; and the diversion of SWFH resources to combat the particular housing discrimination in question.

##### C. Nermana Pehlic

Ms. Pehlic (formerly Ms. Hasancevic) was as a tester employed by SWFH. Ms. Pehlic will testify to her interactions with Defendant's employees and her findings as a tester.

##### D. Maggie Johnson

Ms. Johnson was a tester employed by SWFH. Ms. Johnson will testify to her interactions with Defendant's employees and her findings as a tester.

##### E. Clause Ommegard

Mr. Ommegard was employed by Defendant as a community sales director during the time of Plaintiff's investigation. Mr. Ommegard will testify to the conversations he had with Plaintiff's testers during Plaintiff's investigation.

### F. Hope Guevara

Ms. Guevara was employed by Defendant as a community sales director during the time of Plaintiff's investigation. Ms. Guevara will testify to the conversations she had with Plaintiff's testers during Plaintiff's investigation.

### G. Michael Mejia

Michael Mejia is a Senior Vice President for Atria Senior Living and was responsible for Defendant's operations, in that he oversees Defendant's building maintenance, care for residents, and financial operations. Mr. Mejia will testify to the policies and procedures followed by Defendant's staff during the time of Plaintiff's investigation.

### H. Dr. Shepard-Kegel

Dr. Shepard-Kegl is an expert witness. Dr. Shepard worked with Dr. Amy June Rowley in developing a report detailing the varying language and cultural competencies that are to be found among members of the Deaf population, the range of possible accommodations available (including interpreters and other auxiliary aids), and the varying nature of their need for language accommodation.

### I. Representative from Griffin Group International

A representative from Griffin Group International, which was the transcribing company that transcribed the June 22, 2016 recorded testing.

**2.  Defendant's Witnesses:**

### A. Abby Figueroa

Ms. Figueroa, the Senior Vice President over the Atria Campana del Rio community, will testify regarding its current operations, including how the community would respond to requests for accommodations under the Fair Housing Act and Americans with Disabilities Act.

### B. Maggie Johnson

Tester Maggie Johnson will testify regarding her interactions with Atria Campana del

Rio staff on December 21, 2016, and by email in December 2016 and January 2017 on behalf of her fictitious deaf Grandmother.

    C. Nermana Hasancevic

Tester Nermana Hasancevic will testify regarding her interactions with Atria Campana del Rio staff on June 22, 2016 purporting to be exploring the facility on behalf of her fictitious relative who Ms. Hasancevic described as her deaf grandmother.

    D. Claes Ommegard

Mr. Ommegard, a former Community Sales Director for the Atria Campana del Rio community, will testify regarding his interactions with Plaintiff's testers.

    E. Hope Guevara

Ms. Guevara, a former Community Sales Director for the Atria Campana del Rio community, will testify regarding her interactions with Plaintiff's testers.

    F. Robert Q. Pollard, Jr. Ph.D.

Dr. Pollard will testify in accordance with his report dated November 23, 2019.

    G. Michael Mejia

Mr. Mejia, the Senior Vice President over the Atria Campana del Rio community from 2016 through April 2018, when Abby Figueroa became the Senior Vice President, will testify regarding operations while he in that position, including how the community would respond to requests under the Fair Housing Act and Americans with Disabilities Act.

    H. Paige Ryan

Ms. Ryan, the Executive Director for the Atria Campana del Rio community since October 2019, may testify regarding current operations, including how the community would respond to requests under the Fair Housing Act and Americans with Disabilities Act.

    I. Jennifer Johnson

Ms. Johnson, the National Director of Car, may testify about the individualized assessments and evaluative process used by Atria Campana del Rio to determine the individual needs of current and prospective residents, including needs pertaining to the individual's ability to communicate, and Arizona's licensing requirements, including the levels of care Atria

Campana del Rio is (and was) authorized to provide.

**F.     LISTS OF EXHIBITS**

    1.     The following exhibits are admissible in evidence and may be marked in evidence by the Courtroom Deputy Clerk:

        A.     Plaintiff's Exhibits:

            1. Plaintiff's investigation expense report

            2. Transcript of a recorded conversation on June 22, 2016

            3. Johnson Tester assignment card and instructions

            4. Johnson Tester report

            5. Missed calls

            6. Voicemail Message

            7. Email communication dated December 21, 2016

            8. Email communication dated January 7, 2017

            9. Report of Dr. Shepard-Kegl on Language and Interpreting Issues in Assisted Living Facilities

            10. Pehlic (formerly Ms. Hasancevic) Tester assignment card and instructions

            11. Pehlic (formerly Ms. Hasancevic) Tester report

            12. Audio recording dated June 22, 2016, Bates labeled PLTF000003

            13. The "test" file related to Atria Campana del Rio, Bates labeled PLCAM000092-000202

        B.     Defendant's Exhibits:

            14.     Expert report by Robert Q. Pollard, Jr. Ph.D., Bates labeled Campana000194-Campana000213.

            15.     Acceptance and Retention Policies, see documents Bates labeled ATRIA000001 – 000006.

            16.     Assessment Policies; see documents Bates labeled ATRIA000007

– 000008.

17. Caring for Assistive Devices Documents, see documents Bates labeled ATRIA000009 – 000012.

18. Anti-Discrimination Policies, see documents Bates labeled ATRIA0000013 – 000023.

19. Care Plan Review Documents see documents Bates labeled ATRIA000024 – 000027.

20. Posting and Signage Documents see documents Bates labeled ATRIA000028 – 000029.

21. Preplacement Appraisal Policies see documents Bates labeled ATRIA000030 – 000031.

22. Resident Grievance Process, see documents Bates labeled ATRIA000032.

23. Level of Care Policies, see documents Bates labeled ATRIA000033 – 000035.

24. Training Plans, Guides and Calendar Documents, see documents Bates labeled ATRIA000036- 000108.

25. Campana del Rio Assessment Model and Forms, see documents Bates labeled Campana 000214-000271.

26. Inquiry Journal Histories for Beebe and Hasancevic, Bates labeled Campana 000282-000286.

27. Residential Lease Agreements, Bates labeled Campana 000287-000389.

28. Resident Handbooks, Bates labeled Campana 000390-000419.

29. Anti-Discrimination training sign-in and acknowledgment forms, Bates labeled Campana 000420-434.

2. As to the following exhibits, the parties have reached the following stipulations:

   A. Plaintiff's Exhibits:

   B. Defendant's Exhibits:

 3. The party against whom the following exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:

   A. Plaintiff's Exhibit:

   B. Defendant's Exhibit:

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any objections to exhibits not specifically raised herein are waived.

**G. DEPOSITIONS TO BE OFFERED**

 1. Plaintiff's Deposition Designations: Deposition of Michael Mejia at:

   23:13-16

   26:14-25

   30:2-5

   40:23-41:14

   43:2-25

   45:23-46:11

   46:14-47:1

   47:11-18

   58:12-19

   66:8-25

   84:20-85:9

   85:10-16

   93:8:15

   104:13-20

   107:15-22

   110:20-111:7

   113:7-20

   116:18-24

2.   Defendant's Deposition Designations:

N/A

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed, absent good cause, and that any objections not specifically raised herein are waived.

**H.   MOTIONS *IN LIMINE* AND *DAUBERT* MOTIONS**

Motions in Limine and responses thereto shall be filed as separate pleadings and in accordance with the Court's Order Setting Final Pretrial Conference.

**I.   LIST OF ANY PENDING MOTIONS**

None.

**J.   ESTIMATED LENGTH OF TRIAL**

2 hours for opening statements

24 hours for Plaintiff's case

12 hours for Defendant's case

1 hour for rebuttal

4 hours for closing arguments

**K.   FOR A JURY TRIAL**

A stipulated description of the case, proposed *voir dire* questions, proposed jury instructions, and proposed forms of verdict shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

**L.   CERTIFICATION**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.   All discovery has been completed.

2.   The identity of each witness has been disclosed to opposing counsel.

3.   Each exhibit listed herein: (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.

4. The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

5. The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

6. The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**M.    ADOPTION**

The Court may adopt this Proposed Joint Final Pretrial Order at the Final Pretrial Conference or subsequent hearing.

RESPECTFULLY SUBMITTED this 2nd day April, 2021.

**APPROVED AS TO FORM AND CONTENT**

                              RICHARDS & MOSKOWITZ PLC

                              /s/Shayna G. Stuart
                              William A. Richards
                              Shayna G. Stuart
                              1850 N. Central Avenue, Suite 2010
                              Phoenix, AZ  85004

                              AND

                              EISENBERG & BAUM, L.L.P.
                              Eric Baum, Esq.
                              Andrew Rozynski, Esq.
                              Reyna Lubin, Esq.
                              24 Union Square East
                              Penthouse
                              New York, NY 10003
                              *Attorneys for Plaintiff*

RICHARDS & MOSKOWITZ PLC
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

LITTLER MENDELSON P.C.

/s/ Shawn Oller (with permission)
R. Shawn Oller
Peter C. Prynkiewicz
2425 East Camelback Road, Suite 900
Phoenix, AZ  85016
*Attorneys for Defendant*